## CLARK *vs.* MORSE.

Where *personal property* is attached and delivered to a receipter, the lien of the officer is so far relinquished, that if the receipter sell and deliver the same to a *bona fide* purchaser, with the assent of the owner, the property will pass, notwithstanding the attachment.

A sale of personal property, in order to be valid against the creditors of the vendor, should be accompanied with an open, visible and substantial change of possession, such as indicates a change of ownership ; or a sufficient explanation should exist, to show why the possession was not changed.

Personal property was attached upon a writ, and receipted. The receipter retained the possession a week or two, and then, with the assent of the debtor, sold and delivered the property to a third person, who retained the possession two or three weeks ; after which he permitted it to go back into the possession of the debtor on a contract for hire, and it was subsequently attached by another creditor—*Held*, that the possession of the debtor, after the sale, under such circumstances, was not conclusive evidence of fraud.

TROVER for a horse, waggon and harness.

It appeared in evidence, that prior to November, 1836, the property in question belonged to one John C. Wadleigh— that it was, in that month, attached as his property, on a writ in favor of Noah Clark, and delivered by the officer to Amherst Coult, who gave a receipt for it, promising to return it— and that Coult, after retaining the property a week or fortnight, having obtained the assent of Wadleigh that he might sell if he could get the value at which it was estimated in the receipt, sold it to the plaintiff, Richard S. Clark, at that price. The plaintiff took possession of it, and retained it somewhere from one to three weeks, when he permitted Wadleigh to take and use it, upon a contract, as stated by

Clark *v.* Morse.

Wadleigh, that he should pay fifty cents a week for the use of it ; and he continued to use it nearly all the time until July, 1837, when it was attached by the defendant on a writ in favor of Isaiah D. Richards against said Wadleigh.

The defendant objected to the admission of the evidence to show the sale by Coult to the plaintiff, and contended that Coult, being receipter, had no power to sell, even with the assent of Wadleigh—that the title to the property, therefore, never passed to the plaintiff—and further, that the possession, by Wadleigh, after the supposed sale to the plaintiff, if it was to be regarded as a sale by him, was conclusive evidence of fraud, and rendered the sale void as to the creditors of Wadleigh.

The court overruled the objections, and instructed the jury that Coult had a right, with the assent of Wadleigh, to sell and convey the property, and that if Coult retained the possession of the property a week or two after the attachment and receipt, and before the sale to the plaintiff ; and the plaintiff, upon the sale, took possession, and retained it a week or two more before he permitted it to go back into the possession of Wadleigh, there was a sufficient change of possession, and that under such circumstances the sale would not be void as to creditors, unless it was in fact intended to cover the property from the creditors of Wadleigh.   But if upon this, and the other evidence in the case, they believed that the supposed sale was a pretence to cover the property for Wadleigh's benefit, they should find a verdict for the defendant.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial.

*French*, for the defendant, cited 2 *N. H. Rep.* 135, *Sinclair* vs. *Tarbox ;* 3 *N. H. Rep.* 415, *Coburn* vs. *Pickering.*

*Pillsbury*, for the plaintiff, cited 1 *N. H. Rep.* 289, *Poole* vs. *Symonds ;* 15 *Mass. R.* 244, *Brooks* vs. *Powers.*

Clark *v.* Morse.

PARKER, C. J. The first question is, whether Coult, the receipter, had power, with the assent of Wadleigh, the owner of the property, to sell that property, and pass a valid title to the plaintiff. On this question we see no cause to doubt.

The attachment of the property created a lien upon it, for the satisfaction of such judgment as the plaintiff in that suit might recover, and the officer held it for the purpose of being thus applied in discharge of the judgment; or, in case the plaintiff should fail in his suit, or should neglect to levy his execution, then to be returned to Wadleigh, the defendant in that process.

While the officer held it, he was thus responsible to both plaintiff and defendant for its custody, and for a sale, or return, as the case might be. Had he permitted it to go back into the possession of Wadleigh, before judgment, and thus relinquished the possession and lien, he would have been answerable to the creditor upon his return on the writ; but the possession being relinquished, the property might have been again attached on another writ against Wadleigh, by an officer who had no notice of the first attachment, or he might have sold it to a *bona fide* purchaser, who would have held it against the officer.

Instead of permitting it to go back into the possession of the debtor, the officer delivered it to a third person, and took his receipt for it. By the terms of the receipt the property was to be returned to the officer; but it is well settled that the receipter is not in such case regarded as the mere servant of the officer, but his undertaking is a security for the debt, to the extent of the value of the property. So long as the receipter retains the possession, the officer may reclaim it for the purpose of sale, to satisfy the execution; or, because he is not satisfied with the responsibility of the receipter; or with a view of restoring it to the owner. But the receipter, if he please, may lawfully restore the property to the debtor, and permit him to dispose of it, and thereby deprive himself of the power to return it according to the terms of his engagement;

in which case, upon a lawful demand by the officer, he becomes entitled to recover the value of the receipter.

That this is the nature and effect of such contract, and that the officer can claim no right to re-take the property, in virtue of his attachment, after the receipter has permitted it to go back into the possession of the debtor, and it has been sold by him, is sustained by many decisions upon the legal effect of contracts of this character, and the rights of parties to them. 13 *Pick. R.* 139, *Robinson* vs. *Mansfield ; ante* 11, *Whitney* vs. *Farwell, and cases cited.* And where the officer still holds the possession, the right of the owner to make a sale, subject to the attachment, has repeatedly been recognized. 11 *Pick. R.* 519, *Denny* vs. *Willard ;* 13 *Pick. R.* 388, *Fettyplace* vs. *Dutch ;* 16 *Pick. R.* 27 ; *Ditto* 38. A sale by the receipter, with the assent of the debtor, and acting as his agent, must have the same result as if the possession had been restored to the debtor, and the sale had been made by him. The title may as well pass in the one mode as in the other.

The other question raised in the case has been one of more difficulty. We have no disposition to depart from the rule established in *Coburn* vs. *Pickering,* 3 *N. H. Rep.* 415. That rule may, in some instances, have operated to the loss of a purchaser, who had actually paid a full consideration for property which he had incautiously left in the possession of the vendor ; but we are satisfied that it is sustained on sufficient authority, and that its general operation is salutary, in preserving good faith in sales of personal property, and in preventing litigation upon questions which would otherwise arise, respecting sales of that character, unaccompanied with possession.

But while we adhere to that decision, we have no disposition to extend the principle of that case, so that a vendee can never safely permit the vendor to have the possession and use of the property, after he has parted with the title. This would accomplish no good result.

Clark *v.* Morse.

In Vermont the rule is somewhat different, in its terms, from the one adopted in this state, it being there held that " the want of a change of possession is not merely *prima facie* evidence of fraud, but is a circumstance, *per se*, which renders the transaction fraudulent and void," or " a fraud in law." 1 *Aiken's R.* 158, *Boardman* vs. *Keeler ; 2 Aiken's R.* 64, *Weeks* vs. *Wead ; and cases cited;* 9 *N. H. Rep.* 140, *French* vs. *Hall.* The court in that state have laid down the rule that there must be such a change of possession as indicates to the world at large a change of ownership, (8 *Vermont R.* 352, *Morris* vs. *Hyde,*) and we have no hesitation in adopting, substantially, the same principle. There should, in our opinion, be an open, visible and substantial change of possession, and such an one as indicates a change of ownership ; or a sufficient explanation should exist, to show why the possession was not changed. 9 *N. H. Rep.* 145. It should be such as might fairly lead those around, if they had any interest in the matter, to a reasonable belief that there has been a sale, and change of property. The difficulty has been in the application of this rule to the facts disclosed in this case ; but we have all come to the conclusion, that the charge of the court, in this respect, was correct, and that the verdict must be sustained.

Where there is merely evidence of a sale from one to another, in the ordinary course of business, and a change of possession for two or three weeks, after which the property goes back into the possession of the vendor, and is used as before ; the circumstances, if they do not bring the case within the rule in Coburn *vs.* Pickering, will furnish strong indications, to be left to a jury, upon which to find that the sale was fraudulent in fact, unless the evidence to negative fraud is very clear and conclusive.

If the change of possession is such as to indicate merely a bailment for a short period, for use instead of a sale, it may be, substantially, as respects third persons, as if no change had taken place.

But in this case the change of possession commenced with an attachment of the property, on a demand against the owner ; and this act was one well calculated to give notoriety to the change, and to give information, to all who might have an interest, that the debtor had not merely parted with the possession of the property, on a bailment for hire. And when, after the officer and his receipter had remained in possession for a week or two, another change of the possession took place, on a sale, by the receipter and the owner, to the plaintiff, who retained the possession and use for a week or two longer, there was enough to put any one interested upon an enquiry on what terms and under what circumstances the property had gone from the possession of the officer and receipter, and returned, through the plaintiff, into the possession of the debtor.

After a regular sale upon execution, if the property go back immediately into the possession of the debtor, the case is not within the rule. 3 *N. H. Rep.* 426, *and cases cited.* The attachment here might well give a similar notice ; and after all the circumstances existing in this case, so well calculated to give notoriety to the transaction, if a creditor will contest the sale, he should do so, not upon the ground that the possession by the debtor is conclusive evidence of fraud, but upon a question to the jury, upon the whole evidence, whether there has been an actual attempt at fraud.

This question has been settled against the defendants, and there must be

*Judgment on the verdict.*